IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL GRAHAM ) | |
| 4423 Dery Rd. ) | |
| Upper Marlboro MD 20772 ) | |
| ) | Case No. |
| Plaintiff ) | |
| v. ) | |
| ) | Judge: |
| THE ARCHITECT OF THE ) | |
| CAPITOL ) | |
| U.S. Capitol Building ) | PLAINTIFF'S ORGINAL COMPLAINT |
| Washington D.C. ) | JURY TRIAL DEMANDED |
| Defendant | |

For his Complaint against the Defendant, the Architect of the Capitol, Plaintiff Michael Graham, by and through his undersigned attorneys, avers the following, based on information and belief and/or the Plaintiff's personal knowledge:

**JURISDICTION**

1. Plaintiff invokes the jurisdiction of this Court pursuant to The Congressional Accountability Act of 1995 (2 U.S.C. §1408 (a)), 28 U.S.C. § 1331, 28 U.S.C. § 1332, and 28 U.S.C. § 1343.

2. This is an action authorized and instituted pursuant to The Congressional Accountability Act, (2 U.S.C. 1301 et seq.), Title VII of the Civil Rights Act of 1964, as amended, (42 U.S.C. sections 2000e, et seq.), and the common law.

3. The unlawful employment practices alleged in this complaint were committed in the District of Columbia.

4. The Plaintiff is African American and a resident of Upper Marlboro, Maryland, which is in the Federal Judicial District of Maryland.

5. The Defendant, the Plaintiff's current employer, is a Congressional Agency located in the District of Columbia.

6. Plaintiff has satisfied all administrative and judicial prerequisites to the institution of this action.  On information and belief, the Plaintiff learned that he was not selected for the Evening Shift Assistant Foreman position in July of 2005; he filed a Request for Counseling with the Office of Compliance (within 180 days) on or about September 30, 2005.  The Office of Compliance Counseling period terminated on October 31, 2005, and Mr. Graham filed his Request for Mediation (within fifteen days thereafter) on November 11, 2005.  The Plaintiff received notice of the end of mediation period on December 19, 2005, and this civil action is filed before the expiration of 90 days from that date.

## FACTUAL BACKGROUND RELATED TO ALL COUNTS

*Past Protected Activity*

7. The Plaintiff has been employed with the Architect of the Capitol (AOC) as an Electrician for the House of Representatives since approximately 1975.

8. In December of 2002, because he had been suffering from a hostile environment based on his race for a number of years, Mr. Graham filed a civil action in this Court (Case Number 1:02CV02429), complaining of a hostile environment, retaliation, and denied promotions.  Among the actions constituting the complained of hostile environment was the fact that a rope, tied in the shape of a noose had been left to hang in the electricians' break room in the Rayburn House office Building for a number of years and pictures of white electricians dressed as Ku Klux Klansmen and posing with the noose were posted on the break room's

bulletin board. Other allegations included in Mr. Graham's 2002 civil action demonstrated that his white co-workers and supervisors, including the then General Supervisor, behaved in an overtly racist and discriminatory manner toward African American employees, and that none of the employees or supervisors who perpetrated the discriminatory acts against Mr. Graham and his African American colleagues were disciplined in any manner.

9. The Architect of the Capitol and Mr. Graham settled the aforementioned lawsuit in June of 2003 for the amount of $106,400.00.

10. On information and belief, despite the facts alleged in Mr. Graham's 2002 Complaint, the Architect of the Capitol never disciplined any of the individuals responsible for hanging the rope or fashioning it into a noose. Nor did the Architect of the Capitol discipline any of the high-level supervisors who displayed the obviously racist behavior toward Mr. Graham.

11. In approximately June of 2003, Mr. Graham was promoted to the position of Electrician Leader for the day shift. On information and belief, Mr. Graham was promoted to the Leader position because he was the best-qualified candidate for the position and the Defendant understood that denying him the promotion would likely invite a retaliation claim.

12. Mr. Graham's 2002 lawsuit against the Defendant was common knowledge among his coworkers and supervisors, including the individuals with ultimate responsibility for Mr. Graham's career advancement.

13. Once Mr. Graham was installed as the day shift Electrician Leader ("Leader"), the duties of the position changed considerably. As Leader, Mr. Graham was given

far less office and supervisory duties than other leaders and previous leaders in this position, and was made to perform far more standard electrician duties than previous Leaders. All previous day shift Leaders had been White.

14. In October of 2004, Mr. Graham applied for the position of Assistant Supervisor of the Midnight Shift. He was determined to be qualified for the position, was listed on the certificate of eligibles (or the AoC's equivalent thereof) for the position, and was one of three persons interviewed for the position. Mr. Graham was not selected to the position, and a white co-worker was selected in his place.

15. Because he believed his non-selection to the Night Shift Assistant Foreman position was motivated by discrimination based on race and reprisal in violation of the Congressional Accountability Act, Mr. Graham initiated administrative proceedings before the Office of Compliance on December 3, 2004 and eventually filed a civil action (after exhausting administrative remedies) against the Architect of the Capitol on July 5, 2005. That civil action (1:05cv01340, before Judge Robertson) is currently ongoing in the United States District Court for the District of Columbia.

*Denied Promotion to Evening Shift Assistant Foreman Position*

16. Mr. Graham applied for and was deemed qualified for the position of Evening Shift Assistant Supervisor for the House Office Building Electrical Division in the spring of 2005. Mr. Graham was interviewed for the position but was passed over in favor of a white employee, John Houston, who, on information and belief has never participated in protected equal employment opportunity activities.

*The Architect's Personnel Policies Promote Discriminatory Promotion Decisions*

4

17. On March 12, 2001, the Architect of the Capitol, Alan Hantman, authorized certain changes to the AOC's Career Staffing Policy that were purportedly designed to reduce the "backlog in the filling of many positions that have been authorized and funded."

18. One of the changes to the Career Staffing Plan was to eliminate the requirement that mangers prepare a Crediting Plan for any Vacancy.  A Crediting Plan required that:

    a. The essential Knowledge Skills and Attributes (KSAO) and selective placement factors shall be the only factors used to evaluate candidates to determine which are Highly Qualified.

    b. "Highly Indicative," "Generally Indicative" and "Marginally Indicative" levels of possession for each KSAO were to be evaluated based on a specific point system.

    c. Crediting Plans were to be applied to all of the information submitted by the applicant in response to the requirements specified in the Vacancy Announcement.

19. On May 23, 2003, the Architect of the Capitol rescinded the requirement that managers use a "Justification of Candidates Selected for Interview" form.  This form required managers to "identify the merit factors from the application that [he or she] used to select each candidate for an interview."

20. Concurrent with the March 12, 2001 staffing policy changes, the Architect of the Capitol instructed the Director of Human Resources to conduct random audits of the application of the revised staffing policies, to determine whether a "pattern

and practice of decisions based on other than merit" resulted from the relaxed rules.

21. On information and belief, the random audits required by the Architect to determine whether a pattern and practice of decisions based on other than merit developed as a result of the relaxed staffing rules have never once been conducted.

22. On information and belief, the Architect of the Capitol's hiring and promotion policies permit selecting officials to intentionally manipulate the process in such a way as to unlawfully fabricate justifications for passing over African Americans, persons who have participated in protected equal employment opportunity activities and other protected groups, including Mr. Graham, for selections and promotions.

23. On information and belief, the Architect of the Capitol relaxed the staffing procedures as described above in order to permit its selecting officials to discriminate against African Americans, persons who have participated in protected equal employment opportunity activities and other protected groups, including Mr. Graham, for selections and promotions.

**COUNT I: DISCRIMINATION BASED ON RACE**

24. Plaintiff repeats and reavers each of the foregoing paragraphs as if they were specifically restated here.

25. The decision to deny Mr. Graham the promotion to Assistant Supervisor on the Evening Shift was motivated because of Mr. Graham's race in violation of Title VII of the Civil Rights Act of 1964 and the Congressional Accountability Act.

26. As a result of the discriminatory conduct described above, Mr. Graham has suffered economic damages in the form of lost income, benefits and retirement contributions, in addition to emotional pain and suffering.

## COUNT II: RETALIATION

27. Plaintiff repeats and reavers each of the foregoing paragraphs as if they were specifically restated here.

28. The decision to deny Mr. Graham the promotion to Assistant Supervisor on the Evening Shift was motivated by a desire to retaliate against Mr. Graham for his prior protected activity (namely the 2002 protected activity in response to the hostile working environment and the 2004 and 2005 protected activity in response to his denied promotion to the Night Shift Assistant Supervisor position) in violation of Title VII of the Civil Rights Act of 1964 and the Congressional Accountability Act.

29. As a result of the discriminatory conduct described above, Mr. Graham has suffered economic damages in the form of lost income, benefits and retirement contributions, in addition to emotional pain and suffering.

## COUNT III: DISPARATE IMPACT

30. Plaintiff repeats and reavers each of the foregoing paragraphs as if they were specifically restated here.

31. On March 12, 2001 and thereafter, the Architect of the Capitol implemented facially neutral staffing policy changes, including those specifically described above (i.e., suspending the requirement of a Crediting Plan and the use of "Justification of Candidates Selected for Interviews" forms).

32. On information and belief, the amended staffing policies have had a disparate impact on African Americans with regard to promotions and selections.

33. As a result of the above-referenced staffing policy changes, Mr. Graham has suffered economic damages in the form of lost income, benefits and retirement contributions, in addition to emotional pain and suffering.

WHEREFORE, plaintiff prays that this Court: (i) declare that the employment practices complained of in this complaint are unlawful in that they violate the Congressional Accountability Act and the Civil Rights statutes made applicable to the Architect of the Capitol therein; (ii) permanently enjoin the defendant and its agents, officers and employees from engaging in all practices found by this Court to be in violation of the Congressional Accountability Act; (iii) order the defendant to make the plaintiff whole by granting full back pay, front pay, abridged seniority and reimbursement for all loss of pension, retirement, insurance, Social Security and other monetary and non-monetary benefits, and prejudgment interest, all in amounts to be proved at trial; (iv) order that the defendant pay plaintiff compensatory damages in an amount to be determined at trial; (v) retain jurisdiction over this action to ensure full compliance with the Court's orders and require the defendant to file such reports as the Court deems necessary to evaluate such compliance; (vi) order the defendant to pay plaintiff's costs and expenses and reasonable attorneys' fees in connection with this action; and (vii) grant such other and further relief to the plaintiff as the Court deems just and proper.

PLAINTIFF DEMANDS A TRIAL BY JURY

Respectfully Submitted,

ALDERMAN & DEVORSETZ, PLLC


<u>/s/ by Leslie D. Alderman</u>
Leslie D. Alderman III (D.C. # 477750)
T. Cary Devorsetz (D.C. # 475070)
Sundeep Hora (D.C. # 472944)
1025 Connecticut Ave., NW
Suite 1000
Washington, DC 20036
Tel: 202-969-8220
Fax: 202-969-8224
Attorneys for the Plaintiff